IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JERRY ALLEN CLARK, )
 )
 Plaintiff, )
 )
 ) CIV-09-649-M
v. )
 )
ERIC FORSYTHE, et al., )
 )
 Defendants. )

REPORT AND RECOMMENDATION

Plaintiff, a federal inmate appearing *pro se* and *in forma pauperis*, brings this 42 U.S.C. § 1983 action. Plaintiff seeks damages for alleged violations of his constitutional rights occurring while he was detained in the Grady County Detention Center ("GCDC") and in the custody of the United States Marshal. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). Defendants Forsythe, McGill, and Grady County Board of County Commissioners have moved for summary judgment pursuant to Fed. R. Civ. P. 56, and Plaintiff has responded to the motions. For the following reasons, it is recommended that Defendants' motions be granted.

1

I. Background and Claims

In the criminal case filed in this Court[1] against Plaintiff, <u>United States of America v. Jerry Allen Clark</u>, Case No. CR-07-213-HE, an indictment was filed on August 22, 2007, charging Plaintiff with conspiracy to distribute methamphetamine and distribution of methamphetamine in two counts of a nine-count indictment.[2] Plaintiff was arrested in August 2007 and detained pending trial. Counsel was appointed to represent him in the case. In September 2007, Plaintiff's counsel requested a mental health examination for Plaintiff, and Plaintiff was ordered by the Court to undergo a psychiatric or psychological evaluation. On January 4, 2008, Plaintiff's court-appointed attorney was allowed to withdraw from the case, and new counsel was appointed the same day to represent Plaintiff. On January 24, 2008, a competency determination was conducted by U.S. District Judge Joe Heaton in which Plaintiff was found to be incompetent to stand trial and he was committed to the custody of the Attorney General for placement in a mental health treatment facility for four months. By order entered June 5, 2008, the order of commitment was extended for two months. On September 10, 2008, a competency hearing was conducted by Judge Heaton. Judge Heaton subsequently entered an order subjecting Plaintiff to an involuntary medication treatment plan for the purpose of competency restoration and committing Plaintiff for hospitalization and treatment for another four months. A competency hearing was conducted

---

[1] See <u>State Farm Mut. Auto. Ins. Co. v. Boellstorff</u>, 540 F.3d 1223, 1226 n. 7 (10th Cir. 2008)(recognizing courts may take judicial notice of documents from the public record).

[2] Two co-defendants were also charged in these counts and in the remaining counts.

by Judge Heaton on May 4, 2009, and Plaintiff was found to be competent to stand trial. Plaintiff entered a negotiated guilty plea on September 14, 2009, to the charge of distribution of methamphetamine. On December 17, 2009, the conspiracy charge was dismissed, and Plaintiff was sentenced to serve a term of imprisonment of 72 months in the custody of the U.S. Bureau of Prisons.

In his Complaint filed herein on June 18, 2009, Plaintiff asserts the following as background for this 42 U.S.C. § 1983 action:

> The plaintiff, Jerry Allen Clark, a Federal Detainee pending a criminal trial, held to answer a Grand Jury indictment on a drug offense, was being transported by the U.S. Marshals between F.M.C. Butner, N.C., and Grady County Jail, Chickasha, OK, where upon [sic] two separate occasions, plaintiff Clark was denied his legal property without due process, imposed by neglegence [sic] and illegal protocal [sic] set forth by the defendants self made directives here at the Grady County Jail, resulting in irreparable and ongoing damages to date, stemming from August 26th 2008.

Complaint, at 2. Plaintiff sues Mr. Forsythe, who is identified as a GCDC official "in charge of Federal Detention of inmates [sic]," Mr. McGill, who is identified as a GCDC official "in charge of the Jail operations," and the Grady County Board of Commissioners.

In count one, Plaintiff alleges that he was denied his First Amendment right of access to the courts. He asserts in support of this claim that

> [o]n 08/26/2008 and again on 04/27/2009, upon arrival at Grady County Jail, the receiving officers did confiscate and maintain control of the plaintiff's 1200 and latter [sic] 2000 pages of legal property, evidence and other papers that . . . were pertinent to his pending hearings held on 09/10/2008 and 05/04/2009 and causing interuption [sic] of communication to the courts with

3

>absolutely no alternative access to law library, resulting in irreparable and ongoing damages.

Complaint, at 3.

In count two, Plaintiff alleges that the confiscation of his "legal paperwork" "on the same dates established in count one" denied him due process because "said property cannot be found" and the deprivation of this property caused him to suffer "the loss of liberty and [to be] force medicated" because he was "without certain evidence that would have proven a different outcome of the Sept. 10th, 2008 proceeding." Complaint, at 3.

In count three, Plaintiff alleges that the loss of his "legal property" denied him due process and equal protection where the property "was confiscated without inventory and receipt" that would have protected his interest in the property and where the "intake officer . . . stated that Lt. McGill must first approve the legal property, resulting in loss and irreparable, ongoing damages to afford and maintain a fair and impartial trial in the criminal proceedings." Complaint, at 4. Attached to the Complaint are several written requests authored by Plaintiff directed to GCDC officials. Each of the requests asks that Plaintiff's "2000 pages of legal material" that he brought to the jail with him on April 26, 2009, be delivered to him. One of these requests dated June 8, 2009, contains GCDC staff member Carroll's response: "Have looked in all known storage areas for [Plaintiff's] legal paperwork [without] finding the paperwork. Don't know where else to look or what happened to legal paperwork." Complaint, Ex. E.

Defendants have moved for summary judgment on the grounds that (1) Plaintiff has

failed to exhaust available administrative remedies with respect to his claims as required by 42 U.S.C. § 1997e; (2) Plaintiff has failed to demonstrate the necessary element of actual injury with respect to his claim in count one of denial of access to the courts; (3) Plaintiff has failed to demonstrate a due process deprivation with respect to his claims in counts two and three; (4) Plaintiff has not established the necessary element of personal participation with respect to his individual capacity claims against Defendants Forsythe and McGill; (5) Defendants Forsythe and McGill are entitled to summary judgment with respect to Plaintiff's official capacity claims against them; and (6) Defendant Board of County Commissioners is entitled to summary judgment because Plaintiff has not shown the necessary element of a policy or custom of Grady County which caused or contributed to his alleged constitutional violations and because Defendant Board of County Commissioners has no responsibility for making policies for the GCDC as the Grady County Criminal Justice Authority is the final policymaker for GCDC. Plaintiff has responded in opposition to Defendants' Motions for Summary Judgment, and Defendants have replied to the responses.

II. Standard of Review

Summary judgment may be granted only where the pleadings and documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004). A dispute is "genuine" if a reasonable jury could return

a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[3]

III. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), enacted in 1996, directs that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006). This provision applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all

---

[3]In a prisoner civil rights case such as this one, the plaintiff's complaint is treated as an affidavit if it allege facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. Hall, 935 F.2d at 1111.

6

inmates seeking relief in federal district court even when the administrative procedure fails to provide a particular type of relief, such as monetary damages. Booth v. Churner, 532 U.S. 731, 734, 741 (2001).

Failure to exhaust administrative remedies is an affirmative defense. Jones v. Bock, 549 U.S. 199, 215-216 (2007). Once the affirmative defense is raised, the reviewing court must determine whether the plaintiff properly exhausted administrative remedies by "using all steps that the agency holds out, and [by] doing so *properly* (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.

Mr. Shane Wyatt, the GCDC Jail Administrator, avers in an affidavit attached to Defendants' motions that GCDC detainees are required to complete a two-step administrative process concerning their grievances. This procedure includes the submission of a Request to Staff form and, if necessary, a Grievance form. Mr. Wyatt avers that all GCDC detainees are instructed concerning the grievance procedure when they are "booked" into the jail.

When he was detained in this Court, Plaintiff was remanded to the custody of the United States Marshal and transported to GCDC for detention. As a result of the competency proceedings conducted in this Court, Plaintiff was transported from GCDC to other facilities and then returned to GCDC for detention for purpose of his presence at the competency and plea proceedings conducted in this Court. Mr. Wyatt avers that Plaintiff was detained at

7

GCDC from August 25, 2008, until September 19, 2008, and again from April 27, 2009, until the time Mr. Wyatt prepared his affidavit on November 23, 2009.

In Plaintiff's responsive pleading, Plaintiff states that "the inmates are not instructed about requirement of exhaustion of administrative remedies pursuant to 42 U.S.C. §1997e(a), nor is the law library available to inmates for research." Plaintiff's Response to County Commissioners' Motion (Doc. # 54), at 2. However, Plaintiff does not aver that he was unaware of the two-step grievance procedure used at GCDC for detainees' grievances. Plaintiff merely argues that jail officials did not inform him of the statute requiring him to exhaust administrative remedies. Jail officials had no such obligation.

Plaintiff also argues that exhaustion of administrative remedies should not be required concerning his claim of denial of access to his legal materials. As to this argument, Plaintiff is mistaken. See Jones, 549 U.S. at 918-919 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); Porter v. Nussle, 534 U.S. 516, 532 (2002)(holding "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").

Plaintiff obviously had access to Request to Staff forms while he was detained at GCDC. Plaintiff submitted a Request to Staff form to Defendant McGill on May 13, 2009, and his submitted another Request to Staff form to GCDC officials on June 1, 2009, requesting his "legal papers" and "legal materials." Special Report, Ex. 4. In response to these requests GCDC officials McGill and Cottrell advised Plaintiff they would "check it

out." Id. In a third Request to Staff form submitted by Plaintiff to "Sgt. Caroll" on June 8, 2009, Plaintiff again requested "the return of my 2000 pages of legal material" that he arrived at the jail with on April 26, 2009. Id. In response to this Request to Staff, GCDC official Carroll advised Plaintiff that he was unable to locate the material in the jail's storage areas. The Request to Staff form itself asks whether the detainee has "a grievance pending on this issue." Id. On his Request to Staff forms submitted to GCDC officials, Plaintiff repeatedly responded by checking a box labeled, "Do Not . . . have a grievance pending on this issue" in response to this query. Id. Thus, the undisputed evidence shows that Plaintiff was aware of the two-step administrative remedy procedure employed at GCDC and that Plaintiff failed to exhaust his available administrative remedies concerning all of the claims asserted in his Complaint. Therefore, Defendants' Motions for Summary Judgment should be granted due to Plaintiff's failure to exhaust his administrative remedies at GCDC with respect to the claims asserted in his Complaint.

IV. <u>Plaintiff's Claims of Denial of Access to Courts, Due Process Deprivation of Property, and Discrimination in Violation of Equal Protection Guarantees</u>

Even if Plaintiff could prove he was unaware of the administrative grievance procedure employed at GCDC, and therefore exempted from the exhaustion requirement, Defendants are entitled to summary judgment concerning Plaintiff's claims. Plaintiff's Complaint is not a model of clarity. Considering the parties' pleadings and the undisputed facts, the disingenuously muddled allegations in the Complaint are simply not borne out by the evidence. Plaintiff alleges a denial of access to the courts in count one. However,

9

Plaintiff has confused his constitutionally-protected right of access to the courts with his Sixth Amendment right of representation in a criminal proceeding. "The protections provided by the Sixth Amendment are explicitly confined to criminal prosecutions." <u>Austin v. United States</u>, 509 U.S. 602, 608 (1993)(internal quotation marks omitted). Any claim by Plaintiff that his Sixth Amendment right to effective assistance of trial counsel is "too attenuated" from the alleged actions by Defendants to support his § 1983 claim against Defendants for damages. See <u>Reyes v. Sedillo</u>, 222 Fed. Appx. 753, 755, 2007 WL 867175, *1 (10th Cir. Mar. 23, 2007)(unpublished op.)(holding plaintiff's claim of ineffective assistance of appellate counsel is too attenuated from alleged actions of defendants in denying him access to prison law library or legal assistance in challenging his conviction to support <u>Bivens</u> claim against the defendants). Although Plaintiff had a constitutional right to proceed without counsel in his federal criminal case if he voluntarily and intelligently elected to do so, <u>Faretta v. California</u>, 422 U.S. 806, 807 (1975), Plaintiff did not seek permission to proceed *pro se* in his federal criminal case. Thus, Plaintiff's "constitutional right to conduct his own defense" was never invoked. <u>Id.</u> at 836. Moreover, any claim by Plaintiff that Defendants' actions deprived Plaintiff of his constitutional right to proceed *pro se* in his criminal proceeding (and Plaintiff has not clearly alleged such a claim in his Complaint) would be premature in this 42 U.S.C. § 1983 action in the absence of evidence that his convictions have been overturned or he has otherwise been granted relief that invalidates those convictions. See <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).

In Defendants' Statement of Uncontroverted Facts, Defendants state that Plaintiff's

paperwork was not confiscated. Rather, it was stored in Plaintiff's excess property box on the first floor of GCDC along with the excess property of all other federal detainees housed in the jail. Plaintiff does not provide any evidence to controvert this statement.

Defendants further state that the GCDC detention officer who initially searched for Plaintiff's paperwork and responded to his Request to Staff must have inadvertently looked for the paperwork on the third floor of the jail, where excess property of the jail's state detainees is stored. Defendants state that Plaintiff's paperwork was returned to him after the property was located. Plaintiff admits in his responsive pleading that his legal paperwork was returned to him "after his September 10th, 2008 hearing . . . ." and that when he was later returned to the jail in 2009 his legal material was returned to him "after he had plead [sic] guilty on September 14th, 2009 . . ." in his federal criminal case. Plaintiff's Response (Doc. # 57), at 3.

According to Defendants' Statement of Uncontroverted Facts, the jail has a policy of storing excess detainee paperwork because "[s]toring the entire amount of paperwork in the cell would create a fire hazard and could put all [detainees] on the pod at risk; in addition, such a large stack of paper could be used as a weapon." Additionally, Defendants state that during his deposition Plaintiff testified he was permitted to maintain about 3/4 of his legal materials with him in his cell and that his "legal material does not appear to be missing from the property." Plaintiff has not provided evidence to controvert these facts except to state that his property was returned to him after September 14, 2009, when he entered his guilty plea in the federal criminal case. Defendants state that Plaintiff was also able to obtain specific

11

documents from his box of stored paperwork for any of his ongoing cases, and "Plaintiff [knew] he [could] request to exchange documents in his cell with other documents in his storage." Plaintiff does not provide evidence which controverts this statement.

Defendants state that "Plaintiff was able to file the instant case from the GCDC, and he has not had a case dismissed during the time he has been incarcerated there." Plaintiff does not provide evidence which controverts this statement. Defendants state that "[w]hen asked how not having his legal paperwork available to him disadvantaged him at his September 10, 2008 competency proceeding, Plaintiff responded that if he had been provided access to his legal material at his competency hearing he could have informed the judge that he did not want that attorney representing him and that he was ready to proceed on his own." Plaintiff has not provided evidence to controvert this statement.

In <u>Bounds v. Smith</u>, 430 U.S. 817 (1977), the Supreme Court recognized that inmates have a well-established constitutional right of access to the courts and that States must affirmatively assure that inmates are provided "meaningful access to the courts." <u>Id.</u> at 820-821, 824. Nevertheless, the Court recognized that its decision "does not foreclose alternative means to achieve that goal," and that States may choose to provide prisoners "with adequate law libraries or adequate assistance from persons trained in the law" which will ensure that prisoners have "a reasonably adequate opportunity to present claimed violations of fundamental rights to the courts." <u>Id.</u> at 825, 828, 830. Because there is no "abstract, freestanding right to a law library or legal assistance," an inmate alleging a denial of his right of access to the courts must show actual injury and "an inmate cannot establish relevant

actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis v. Casey, 518 U.S. 343, 351 (1996).  Hence, the inmate must show that deficiencies in the law library or legal assistance program actually "hindered his efforts to pursue a legal claim" in order to establish a violation of his constitutional right of access to the courts.  Id.

     Defendants are entitled to summary judgment with respect to Plaintiff's claim in count one of denial of access to the courts for two reasons.  One, Plaintiff had the assistance of court-appointed counsel throughout his federal criminal proceeding, and Plaintiff has not alleged that he was denied access to the courts for any other reason other than his defense of the criminal charges filed against him in this Court.  Therefore, GCDC was not obligated under Bounds to provide Plaintiff was physical access to a law library or legal resources.  Two, the undisputed facts reflect that Plaintiff was not actually injured as a result of the temporary denial of access to his legal paperwork on one occasion in 2008 and on another occasion in 2009 during the time periods he was detained at GCDC.  Because Plaintiff had counsel appointed to represent him throughout his federal criminal proceeding and because it is undisputed Plaintiff had no civil case dismissed during his detention at GCDC, Plaintiff cannot demonstrate actual injury as result of the alleged temporary denial on two occasions of access to his legal paperwork.  Moreover, because the Plaintiff's pleadings and the uncontroverted facts demonstrate nothing more than the negligent act of GCDC officials which temporarily deprived Plaintiff of his personal property, Defendants are entitled to summary judgment concerning Plaintiff's due process claims in counts two and three of a

deprivation of property. See Daniels v. Williams, 474 U.S. 327, 328 (1986).

With respect to all of Plaintiff's claims asserted against Defendants McGill and Forsythe in their individual capacities, "'[p]ersonal participation is an essential allegation in a § 1983 claim.'" Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996)(quoting Bennett v. Passic, 545 F.2d 1260, 1262-1263 (10th Cir. 1976). Plaintiff alleges only that Defendants McGill and Forsythe had supervisory status at the jail and over its employees. There is no allegation or evidence that either Defendant personally participated in the temporary deprivation of Plaintiff's personal property. The undisputed facts show that Defendant McGill's only participation was his response to Plaintiff's Request to Staff seeking his "legal papers/files" that he would look into the matter. This is not sufficient to support § 1983 liability against Defendant McGill in his individual capacity.

Finally, Plaintiff has invoked the equal protection clause without any demonstration of disparate treatment of similarly situated detainees. See Jennings v. City of Stillwater, 383 F.3d 1199, 1213 (10th Cir. 2004). Thus, Defendants are entitled to summary judgment with respect to this claim.[4]

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants Board of County Commissioners of Grady County's Motion for Summary Judgment (Doc. # 48) and

---

[4] It is not necessary to address the remainder of Defendants' arguments in favor of their dispositive motions.

14

Defendant Eric Forsythe and Defendant Larry McGill's Motion for Summary Judgment (Doc. # 49) be GRANTED and that judgment issue in favor of Defendants and against the Plaintiff. Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by     March 31st    , 2010, in accordance with 28 U.S.C. § 636. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   11th   day of    March   , 2010.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE